| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFF:<br><br>**JOHN DARJEAN** | DEFENDANTS:<br><br>**SHILO DION SANDERS** |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

Ori Raphael  24088273
Mathias Raphael PLLC
13101 Preston Road, Suite 501
Dallas, TX 75240
214-739-0100
ori@mr.law

SWEETBAUM MILLER, PC
Alan D. Sweetbaum
Andrew Miller
1200 17th Street, Suite 1250
Denver, CO 80202
Telephone: (303) 296-3377
asweetbaum@sweetbaumlaw.com
amiller@sweetbaumlaw.com

Jeff Carruth 24001846
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
24 Greenway Plaza, Suite 2050
Houston, TX 77046-2445
713-341-1158 Fax: (713) 961-5341
jcarruth@wkpz.com

**ATTORNEYS** (If Known)

Keri L. Riley 47605 CO
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln Street
Suite 1720
Denver, CO 80264
303-832-2400
klr@kutnerlaw.com

James Van Horn
Barnes & Thornburg LLP
555 12th St NW Suite 1200
Washington, DC 20004
202-371-6351
JVanHorn@btlaw.com

| **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
   **NONDISCHARGE OF DEBT, 11 U.S.C. §523(a)(6).**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

FRBP 7001(1) - Recovery of Money/Property
[ ]  11-Recovery of money/property - §542 turnover of property
[ ]  12-Recovery of money/property - §547 preference
[ ]  13-Recovery of money/property - §548 fraudulent transfer
[ ]  14-Recovery of money/property - other

FRBP 7001(2) - Validity, Priority or Extent of Lien
[ ]  21-Validity, priority or extent of lien or other interest in property

FRBP 7001(3) - Approval of Sale of Property
[ ]  31-Approval of sale of property of estate and of a co-owner – §363(h)

FRBP 7001(4) - Objection/Revocation of Discharge
   41-Objection / revocation of discharge – §727(c),(d),(e)

FRBP 7001(5) - Revocation of Confirmation
[ ]  51-Revocation of confirmation

FRBP 7001(6) - Dischargeability
[ ]  66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ]  62-Dischargeability - §523(a)(2), false pretenses,
       false representation, actual fraud
[ ]  67-Dischargeability - §523(a)(4), fraud as fiduciary,
       embezzlement, larceny

FRBP 7001(6) - Dischargeability (continued)
[ ]  61-Dischargeability - §523(a)(5), domestic support
☑  **68-Dischargeability - §523(a)(6), willful and malicious injury**
[ ]  63-Dischargeability - §523(a)(8), student loan
[ ]  64-Dischargeability - §523(a)(15), divorce or separation obligation
       (other than domestic support)
[ ]  65-Dischargeability - other

FRBP 7001(7) - Injunctive Relief
[ ]  71-Injunctive relief - imposition of stay
[ ]  72-Injunctive relief - other

FRBP 7001(8) Subordination of Claim or Interest
[ ]  81-Subordination of claim or interest

FRBP 7001(9) Declaratory Judgment
☑  91-Declaratory judgment

FRBP 7001(10) Determination of Removed Action
[ ]  01-Determination of removed claim or cause

Other
[ ]  SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
[ ]  02-Other (e.g. other actions that would have been brought in state
       court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $**11,890,937.42** |

Other Relief Sought:

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>　　SHILO DION SANDERS | | BANKRUPTCY CASE NO.<br>　23-14859-MER |
| DISTRICT IN WHICH CASE IS PENDING<br>　　COLORADO | DIVISION OFFICE<br>　　DENVER | NAME OF JUDGE<br>**MICHAEL E. ROMERO** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>**/s/ Jeff Carruth**<br>_____<br>**Jeff Carruth 24001846**<br>_____ | | |
| DATE<br>**January 29, 2024** | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>**Jeff Carruth, Texas Bar No. 24001846** | |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**
**DENVER DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **CH. 7** |
| | § | |
| Debtor. | § | |
| | § | |
| **JOHN DARJEAN** | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Adv. Proc. No. _____** |
| vs. | § | |
| | § | |
| **SHILO DION SANDERS,** | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR NONDISCHARGE OF DEBT**

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................1

**JURISDICTION AND VENUE**.............................................................................................2

**PARTIES**..............................................................................................................................3

**FACTUAL BACKGROUND**...............................................................................................3

    Procedural background of the Lawsuit .................................................................4

    The underlying assault and battery .....................................................................5

    A history of discipline problems leading to the assault .......................................9

    Permanent, debilitating injuries to Darjean .......................................................10

    The Lawsuit and final Judgment.......................................................................14

    Shilo files for Bankruptcy.................................................................................16

    Schedules and meeting of creditors ..................................................................16

    Items not disclosed on schedules ......................................................................17

    Informal discovery not fulfilled........................................................................23

    Shilo buys a house for Deion just after filing for bankruptcy............................23

**CAUSES OF ACTION** .......................................................................................................24

    Count 1—Objection to discharge, Code § 523(a)(6) ..........................................24

    Count 2—Recovery of Attorney Fees and Expenses.........................................25

**CONDITIONS PRECEDENT** ............................................................................................26

**CONCLUSION AND PRAYER** .........................................................................................26

## INDEX OF EXHIBITS

| Exhibit ## DAR____ | Description |
|---|---|
| 001 | State court docket |
| 002 | Plaintiff's Original Petition |
| 003 | Plaintiff's Third Amended Petition |
| 004 | Findings of Fact - Conclusions of Law |
| 005 | Final Judgment |
| 006 | Deposition excerpts - Darjean |
| 007 | CPS Records |
| 008 | Deposition excerpts - Haynes |
| 009 | Deposition excerpts - McClure |
| 010 | Deposition excerpts - Shilo |
| 011 | Deposition excerpts - Dr. Phillips |
| 012 | Deposition excerpts - Dr. Patel |
| 013 | Motion - Third Party Petition |
| 014 | Motion - Exclude Expert |
| 015 | Appeal - Third Party Petition |
| 016 | Transcript - 341 meeting |
| 017 | New article - new house Jan. 27, 2024 |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO
## DENVER DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 23-14859** |
| **SHILO DION SANDERS,** | § | |
| | § | **CH. 7** |
| | § | |
| Debtor. | § | |
| | § | |
| **JOHN DARJEAN** | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Adv. Proc. No. _____** |
| **vs.** | § | |
| | § | |
| **SHILO DION SANDERS,** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR NONDISCHARGE OF DEBT

**TO THE HONORABLE MICHAEL E. ROMERO, U.S. BANKRUPTCY JUDGE:**

John Darjean ("Darjean" or the "Plaintiff"), assault and battery victim, creditor, and party in interest files this *Plaintiff's Original Complaint for Denial of Discharge* (the "Complaint") against Defendant Shilo Dion Sanders ("Shilo"[1] or the "Debtor") and in support thereof would show to the Court the following.

## INTRODUCTION

1.      This is an action to determine that the judgment and/or claims of Darjean against Shilo arising from the vicious beating that Shilo inflicted upon Darjean are excepted from any discharge the Shilo might receive under Code § 523(a)(6).

---

[1] This Complaint also references Shilo Sanders' father, Deion Sanders, and his mother, Pilar Sanders. To avoid confusion due to the common surname, first names are used throughout this Complaint. No offense is intended.

## JURISDICTION AND VENUE

2.      Darjean believes that the Judgment of the 160th District Court, Dallas County, Texas should be given and shall be given preclusive effect considering the unique and extensive procedural history involving Shilo, such that no questions remain open as to (i) the liability of Shilo for the intentional tort(s) committed by Shilo upon Darjean, and, (ii) the adjudication of the nondischargeable nature of the liability of Shilo under Code §523(a)(6), and thus under those circumstances this Bankruptcy Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and/or 157(b) to enter judgment here that the Judgment (as defined below) of the state court is nondischargeable Code §523(a)(6).

3.      If, when, and to the extent any adjudication occurs in this action by which Darjean must again prove the liability of Sanders and the damages inflicted upon Darjean by Shilo for the Incident (as defined below), then (i) this Bankruptcy Court does not have jurisdiction and/or authority to liquidate the personal injury claim(s) of Darjean against Shilo, (ii) which (potential) adjudication should occur in the United States District Court for the Northern District of Texas ("TXND") pursuant to 28 U.S.C. §§ 157(b)(2)(C) and/or 157(b)(5) and/or the standing order of reference for this district, General Procedure Order No. 1984-3, and/or otherwise the reference should be withdrawn to the District Court and venue transferred to TXND, (iii) which adjudication should ultimately occur in the 160th District Court, Dallas County Texas under applicable law including 28 U.S.C. § 1334, 11 U.S.C. § 305, and/or equitable doctrines or remand and/or abstention, and (iv) for which adjudication Darjean expressly reserves and demands his right to trial by jury. *See* Fed. R. Civ. P. 38(a), (b); Fed. R. Bankr. P. 9015.

4.      Initial venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409;however, pursuant to 28 U.S.C. §157(b)(5) and/or the standing order of reference for this district, General Procedure Order No. 1984-3 of the United States District Court for the District of

Colorado,  Darjean reserves the right to file and/or shall file a motion to transfer venue to the United States District Court for the Northern District of Texas, Dallas Division.  Any additional proceeding to again liquidate the claims of Darjean, if necessary, should occur in the 160th District Court, Dallas County Texas.

## PARTIES

5.      Darjean is an individual residing in Dallas County, Texas.  Darjean may receive notice in this action through the undersigned counsel of record.

6.      Shilo is the Debtor in the underlying Chapter 7 bankruptcy case pending in this Court.  Pursuant to Fed.R.Bankr.P. 7004, Debtor may be served by regular mail by and through the following address(es), including counsel of record for Shilo.

| Debtor | Counsel for Debtor |
|---|---|
| Shilo Dion Sanders<br>PO Box 1864<br>Longmont, CO 80502 | Keri L. Riley<br>Kutner Brinen Dickey Riley, P.C.<br>1660 Lincoln Street, Suite 1720<br>Denver, CO 80264<br><br>James Van Horn<br>Barnes & Thornburg LLP<br>555 12th St NW Suite 1200<br>Washington, DC 20004 |

## FACTUAL BACKGROUND

**Bankruptcy case history.**

7.      On October 23, 2023 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under Chapter 7 of the United States Bankruptcy Code, Title II United States Code, 11 U.S.C. § 101 *et seq*. (the "Code").

8.      David V. Wadsworth initially was named and remains as the Chapter 7 Trustee in this case.

9.      With the Petition, Shilo filed his initial schedules and statement of financial affairs ("SOFA").  *See* Docket No. 1.

10.     On the day of the Code § 341 meeting of creditors, Shilo filed amended schedules and an amended SOFA.  *See* Docket Nos. 19, 20, 21.

**Procedural background of the Lawsuit.**

11.     On June 20, 2016, John Darjean ("Darjean") filed a lawsuit against Shilo Sanders ("Shilo" or the "Debtor") in the 160th Judicial District Court, Dallas Texas, Cause Number DC-16-0737 (the "Lawsuit").  Ex. DAR002 (Plaintiff's Original Petition[2]); Ex. DAR003 (Plaintiff's Third Amended Petition).

12.     Darjean filed the Lawsuit because of the horrible and vicious attack committed by Shilo on Darjean that occurred on September 17, 2015 (the "Incident").

13.     As further explained below, Shilo was represented by counsel and was a full participant in all proceedings through and until the trial.

14.     For example, counsel for Shilo defended his deposition, brought motions for leave to file third party actions, appealed an associate judge's decision denying a motion, filed motions to exclude expert testimony, and participated in discovery, among other pretrial activities.

15.     In an effort to escape liability and accountability, and after diligently contesting the Lawsuit through and until the trial, Shilo simply ignored all notices and refused to appear for trial. Ex. DAR001 (docket).

16.     On April 12, 2022, the state court entered its Findings of Fact ("FOF"); Ex. DAR004 (FOF).

---

[2]  Each exhibit identified and/or referenced in this Complaint is incorporated by reference herein as if fully set forth verbatim.  *See*  Fed. R. Bank. P. 7010(c)

17.     On May 18, 2022, the state court also entered judgment against Shilo and in favor of Darjean in the original principal amount of $11,890,387.42 (the "Judgment"). Ex. DAR005 (Judgment).

18.     To-date, the entire Judgment remains unsatisfied.

19.     On October 20, 2023, Darjean was on the verge of the appointment of a receiver over Shilo, which hearing was stayed by the commencement of this case.  Ex. DAR001 (docket).

**The underlying assault and battery.**

20.     At the time of the Incident, Darjean was employed as a security officer at Focus Academies ("FA") and had held that position since 2011.  Ex. DAR006 (Darjean Depo), p. 20 L:15-18.

21.     Shilo was a student at Triple A Academy ("Academy"), the FA high school. Ex. DAR006, p. 25 L:16-25.

22.     Shilo was fifteen years of age at the time of the Incident.  Ex. DAR007 (CPS[3] records), p. 12.

23.     Shilo turned eighteen years of age on February 9, 2018, well before trial.

24.     On Thursday, September 17, 2015, at approximately 10:45 a.m., Darjean was contacted by the Academy principal, Mrs. Green, as Darjean was going to lunch.  Ex. DAR006, pp. 25-26.

25.     Mrs. Green asked Darjean if Darjean would retrieve Shilo.

26.     Shilo was playing a dice game in a classroom and interrupting class despite the teacher's requests for Shilo to stop.  Ex. DAR006, pp. 26, 27.

---

[3] CPS refers to Texas Child Protective Services.

27.     Darjean arrived at the classroom and waved Shilo to come with him. Ex. DAR006, pp. 27, 28.

28.     Shilo stood up cursing and stated "man, I just want to know the mother fucker that snitched on me." Ex. DAR006, p. 28 L:15.

29.     Darjean then escorted Shilo to the office of Coach Hart, FA's disciplinary officer at the time.  Ex. DAR006, p. 29, 30.

30.     En route to, as well as upon arriving at the disciplinary office, Shilo was cursing loudly and repeatedly asked "who snitched on him."  Ex. DAR006, pp. 31, 32 L:11-15.

31.     Because Shilo acted disruptively in the disciplinary office, Coach Hart instructed Darjean to take Shilo to In-School Suspension "ISS," which Darjean promptly did.  Ex. DAR006, p. 33 L:15.

32.     Approximately five (5) minutes after leaving Shilo at ISS, Darjean received a call to return to ISS and escort Shilo back to the disciplinary office because Shilo was making telephone calls against school policy and otherwise being disruptive. Ex. DAR006, pp. 34, 35.

33.     Shilo was uncontrollable, shouting obscenities and cursing at school staff, all while refusing the ISS teacher's numerous requests to cease acting out and to stop talking on his telephone. Ex. DAR006, pp. 34-36.

34.     Darjean then brought Shilo to his own office because Coach Hart was out to lunch. Ex. DAR006, pp. 37-38.

35.     While in Darjean's office, an assistant of Shilo's father, Deion Sanders, came to Darjean's office.  Ex. DAR006, p. 40.

36.     The assistant had Deion Sanders on the telephone when the assistant arrived at the office and, upon entering, passed the telephone to Darjean. Ex. DAR006, p. 40.

37.     Deion Sanders heard that Shilo was calling Deion's ex-wife, Pilar Sanders, and Deion Sanders demanded Darjean stop Shilo from contacting Pilar Sanders by Darjean seizing Shilo's phone.  Ex. DAR006, p. 40.

38.     At the time, Deion and Pilar were going through a public and nasty feud in family court over their divorce and custody matters.   Ex. DAR006, p. 40.

39.     Deion Sanders repeatedly asked Darjean to take the phone from Shilo.    Ex. DAR006, p. 40.

40.     Furthermore, using the telephone was a violation of FA's policies, procedures, and rules.  Ex. DAR006, p. 40.

41.     Darjean repeatedly and calmly asked Shilo to get off the telephone and turn it over to him.  Ex. DAR006, pp. 38-40.

42.     Shilo refused every request of Darjean to relinquish the phone.  Ex. DAR006, pp. 38-40.

43.     Shilo then abruptly walked out of the office despite being told not to do so.  Ex. DAR006, pp. 38-40.

44.     Deion Sanders told Darjean "do me a huge favor," he said, "you're my brother in Christ, I need you to go get the phone…as soon as you get the phone from him, give me a call back." Ex. DAR006, p. 43 L:7-10.

45.     Darjean followed Shilo into the hallway when suddenly and without warning, Shilo violently attacked Darjean.  Ex. DAR006, pp. 38-40.

46.     Darjean was telling Shilo he could not use the telephone and was attempting to take the telephone from Shilo when Shilo snapped and:

> "took his elbow and slammed it as hard as he could, super hard, right at my chest and up in my -- and then it drove it into my neck, and then I fell back. And then when I fell back,

my mind instantly went into restrain, restrain, restrain from hitting any kids because we had about seven kids right there, from hitting me again or him hurting himself again. So, I come to and I come back up. As I fall back, I come back up. I feel two more blows right at my chest and my neck, boom, boom." Ex. DAR006, p. 47 L:5-15.

47.      When Shilo's attack came to an end, Darjean lay on the ground and immediately began feeling tingling sensations and his equilibrium was off.  Ex. DAR006, p. 49.

48.      The violent attack was witnessed by multiple employees of FA and recorded on video surveillance.  Ex. DAR008 (Haynes Depo.), pp. 12, 14.

49.      An Employee of FA and the Academy, Saundra Haynes ("Haynes") "witnessed Shilo punching coach Darjean in the face." Ex. DAR008, pp. 12 L:9-11, 14L:19.

50.      Shilo was using his fist when employee Haynes witnessed the melee in clear view. Ex. DAR008, p. 15 L:19-20.

51.      Darjean then lost control of his bladder and uncontrollably urinated all over himself. Ex. DAR006, pp. 49, 50.

52.      Darjean was dizzy and lightheaded and in a lot of pain and had a tingling sensation all down his left side.  Ex. DAR006, pp. 49, 50.

53.      Emergency 911 was called, and Darjean, assisted by another employee, was taken down the hall where they met up with the paramedics.

54.      Darjean was placed on a stretcher and taken by ambulance to the hospital.  Ex. DAR006, p. 51.



*September 22, 2023, Darjean in the Emergency Room after a 6-level posterior cervical decompression with a posterior cervical fusion.*

**A history of discipline problems leading to the assault.**

55.     Prior to the attack, Shilo had numerous disciplinary and troublesome issues at FA. Ex. DAR009 (McClure Depo), pp. 69-70).

56.     Shilo was disciplined for threatening a teacher just two weeks prior to the attack on Darjean, and the disciplinary problems FA had with Shilo were too numerous to list them all.   Ex. DAR009, pp. 69-70.

57.     In fact, every time Deion Sanders "turned around, someone [was] talking to him about a discipline problem that Shilo had." Ex. DAR009, p. 70 L:4-6.

58.     After the Incident, Darjean immediately filed a police report with the Dallas Police Department.  Ex. DAR006, p. 52:15-20.

59.     Shilo was suspended from school immediately after the attack on September 17, 2015, and sent home.  Ex. DAR007 (CPS records), p. 11, Ex. DAR009, p. 64.

60.     FA and/or the Academy barred Shilo from returning to school the following day. Ex. DAR009, p. 64.

61.     However, on September 18, 2015, Shilo returned to FA despite being suspended, to hunt down the student who supposedly "snitched" on him for shooting dice in class.

62.     Shilo found student "D.A" (a minor) and attacked him, committing assault and battery on D.A.

63.     Again, FA and/or the Academy barred Shilo from the school, and Shilo was sent home again.

64.     Deion Sanders took Shilo to the Dallas County Juvenile Detention Center due to Shilo's violent, erratic, and dangerous conduct assaulting and battering Darjean and another student within 24 hours of each other.

65.     On September 18, 2015, Deion Sanders transported Shilo to, and admitted Shilo into, the Letot Center crisis intervention program where he stayed for 30 days.  Ex. DAR007, pp. 11, 13 and Ex. DAR010, (Shilo depo) pp. 221.

66.     The Texas Department of Family and Protective Services investigated Shilo's actions while Shilo was incarcerated and determined, based upon Deion's testimony and video evidence from the school, that Shilo instigated the attack on Darjean and was to blame Ex. DAR006, p.60; Ex. DAR007, pp. 1-22.

**Permanent, debilitating injuries to Darjean**

67.     As a result of Shilo's assault and battery, Darjean sustained severe and permanent injuries including a broken neck, damage to his cervical spine, permanent neurological injuries and irreversible incontinence.

68.     The injuries Shilo inflicted on Darjean are extensive debilitating, painful, and permanent.

69.     Darjean now experiences constant sharp pains, uncontrollable muscle spasms, numbness throughout his body, and weakness on his left side and in his arms.

70.     On occasion, Darjean also suffers from slurred speech.

71.     Doctors performed a cervical spine fusion surgery upon Darjean at the C3 through C7 levels, and the levels above and below that fusion were herniated and causing cord compression caused by Shilo's attack.  Ex. DAR011 (Dr. Phillips depo.), p. 20 L: 1-20.



*September 17, 2015, X-ray of Darjean prior to his first Cervical Spine Fusion*

72.     The "semi-emergent cervical spine surgery was performed by Dr. Patel at Methodist Hospital.  Ex. DAR011 (Dr. Phillips depo), p. 10 L:9.

73.     When asked "what's the difference in the healing process for a spinal cord versus like a muscle strain," Dr. Patel responded that "[a] Spinal cord is very unforgiving.  It's like lying to your wife."  Ex. DAR012, (Dr. Patel depo), p. 27 L:2.

74.     The fusion of five vertebral bodies puts additional stress on the areas that are not fused, accelerating the breakdown of those levels. Ex. DAR012, (Dr. Patel depo), p. 27-28.

75.     Darjean's hardware failed which resulted in his most recent surgery below.



*On September 22, 2023, Darjean underwent a 6-level posterior cervical decompression with a posterior cervical fusion due to the hardware failure from the previous cervical fusion.*

76.     As of February 19, 2016, Darjean was still having ongoing "left neck, shoulder blade and left upper extremity back as well as left low back and left lower extremity pain."  (Ex. DAR011 (Dr. Phillips depo), at p. 10 L:19.

77.     The upper extremity pain went "[d]own into the arm into the extensor forearm and into primarily the index and third finger."  Ex. DAR011 (Dr. Phillips depo), at L:23.

78.     Furthermore, Darjean suffered "neuropathic injury and pain with ongoing loss of strength and decreased sensation in the C7 pattern" as diagnosed by Dr. Phillips.  (Ex. DAR011 (Dr. Phillips depo), p. 11 L:3.

79.     Darjean additionally suffered from "back pain going into the buttock down the leg," suffered from pain indicative of an L5 nerve pattern which was present in his posterior thigh,

lateral calf, the dorsal aspect of the foot, and pain which traveled all the way down into his great toe. (Ex. DAR011 (Dr. Phillips depo), p. 11 L:8.

80.     Darjean also continued to have "increased discomfort with neck flexion, lateral bending, and rotational movement that was more to the left than right on range of motion. Ex. DAR011 (Dr. Phillips depo), p. 12 L:24.

81.     In 2016 alone, Darjean underwent multiple "transforaminal epidural injections." providing some relief. Ex. DAR011 (Dr. Phillips depo), p. 28-29.

82.     As of March of 2017, Darjean continued to have severe neck and upper extremity pain, numbness and "ongoing neurologic or neuropathic pain in that left C7 pattern" presenting to the ER when he would experience severe numbness, spasms, slurring his speech and losing strength in his legs (Ex. DAR011 (Dr. Phillips depo), p. 29.

83.     Darjean's continued pain was so severe that he had to go to the emergency room on several occasions during 2017 as the medications Darjean was taking would not control the pain levels. Ex. DAR011 (Dr. Phillips depo), p. 30).

84.     By November of 2017 Darjean received a permanent spinal cord stimulator amongst other treatments and emergency room visits. Ex. DAR011 (Dr. Phillips depo), p. 34.

85.     In 2018, Darjean was receiving ongoing treatment for his conditions including "IM pain injections three to four times per month despite us trying multiple medications for spasms" and had several more emergency room visits as often pain levels were not manageable. Ex. DAR011 (Dr. Phillips depo), p. 37.

86.     Because of the injuries he sustained in the assault and battery by Shilo, Darjean was unable to return to work at FA. Ex. DAR004 (FOF), I-18.

87.     As of the signing of the FOF, Darjean was still receiving medical treatment for his injuries and will continue to do so for the remainder of his life.  Ex. DAR004 (FOF), I-11.

88.     Darjean must continue to wear adult diapers due to his incontinence caused by his spine and neck injuries and continues to suffer from spasms, sharp pains, weakness and numbness on a daily basis.

**The Lawsuit and final Judgment**

89.     Shilo was fifteen at the time of the Incident and sixteen at the time the lawsuit was filed. Ex. DAR007 (CPS rec.) p. 12 of 22.

90.     During his deposition in the case, on February 19, 2018, Shilo was 18 years old and a legal adult (Shilo's birthdate is Feb. 9, 2000).  Ex. DAR010 (Shilo depo.), p. 211.

91.     By the time the case was called to trial, on March 28, 2022, Shilo was twenty-two (22) years old and well past the age of majority.

92.     On August 16, 2016, Utica Mutual Insurance Company ("Utica") filed a Plea in Intervention in the lawsuit seeking subrogation of workers compensation benefits paid to Darjean and arising out of the incidents made the basis of Darjean's action filed against Shilo.  Ex. DAR004 (FOF), Ex. DAR005 (Judgment).

93.     On March 28, 2022, after protracted litigation, much discovery, many hearings. and many trials rescheduled, the case was called to trial.  Ex. DAR001 (docket); Ex. DAR005, (Judgment).

94.     Shilo had vigorous legal representation throughout the litigation which spanned over five years.  DAR001 (docket)Ex. DAR001 (docket).

95.     Shilo, for example, brought motions for leave to file third party actions; appealed the associate judge's decision denying the motions for leave; and Shilo filed motions to exclude

expert testimony, just to name a fraction of the filings.  Ex. DAR001 (docket), Ex. DAR013 (motion third party action), Ex. DAR014 (motion to exclude), Ex. DAR015 (appeal).

96.     In fact, a review of the trial court's proceedings demonstrates that Shilo was well represented throughout the litigation contesting numerous matters, filing a number of motions and pleadings, and asserting legal positions and arguments, and litigation every twist and turn of the case far beyond any usual standards.  DAR001 (docket).

97.     However, Shilo failed to appear for the trial.  Ex. DAR001 (docket); Ex. DAR005 (Judgment).

98.     On April 12, 2022, the trial court entered its FOF.  Ex. DAR004 (FOF).

99.     On May 18, 2022, the trial court entered a Final Judgment against Sanders and in favor of Darjean and Utica.  Ex. DAR005 (Judgment).

100.    The trial court found and concluded that Sanders committed assault and battery on Darjean and that Darjean suffered physical harm and injuries proximately caused by Sanders wrongful actions. Ex. DAR004 (FOF) III-1, 2, 9.

101.    A final Judgment was entered based upon the intentional torts committed by Shilo, in the amount of $11,890,937.42 in favor of Darjean.  Ex. DAR005 (Judgment).

102.    That Final Judgment was not appealed nor was a motion for a new trial filed.  Ex. DAR001 (docket), Ex. DAR005 (Judgment).

103.    Because Shilo participated fully in the Lawsuit until the eve of trial, and then again following the entry of the Judgment, the failure of Shilo to attend trial was willful and intentional.

104.    Shilo sufficiently participated in the Lawsuit such that the FOF and the Judgment should be given preclusive effect in this adversary proceeding.

**Shilo files for Bankruptcy.**

105.    On July 11, 2023, Darjean filed a Motion for Post-Judgment Receivership in Dallas County Courts, Cause No. DC-16-07371.

106.    The hearing for Post-Judgment Receivership was set for September 15, 2023, on the above said motion.

107.    On September 5, 2023, Shilo's new attorneys from a national, big-named law firm (which firm has also appeared for Shilo in this case) suddenly appeared in the lawsuit and requested a rescheduling of the hearing for time to become acclimated to the case.

108.    The hearing for post-judgment receivership was reset to October 20, 2023

109.    Shilo filed a response to the Motion for Post-Judgment Receivership on October 17, 2023.

110.    On October 19, 2023, Shilo was served with a subpoena to attend the October 20, 2023, post-judgment receivership hearing.

111.    The Court unilaterally rescheduled the Post-Judgment Receivership hearing to November 3, 2023.

112.    On October 23, 2023, a mere 3 days after being served a subpoena to attend the post-judgment receivership hearing, Shilo filed for Chapter 7 Bankruptcy based solely on Darjean's attempts to collect the $11.89 million Judgment.

113.    The post-judgement receivership was automatically stayed due to the bankruptcy filing by Shilo.

**Schedules and the Meeting of Creditors.**

114.    On October 23, 2023, Shilo filed his schedules with his petition, Docket No. 1.

115.    On December 19, 2023, just prior to the Code § 341 meeting of creditors Shilo filed amended schedules, including amended Schedule AB, Docket No. 20.

116.    According to the schedules, Shilo possesses only the personal property referenced and described below.

| AB # | Description | Docket No. 1 | Docket No. 20 |
|---|---|---|---|
| 3.1 | Mercedes GLE AMG 635 | 75,900.00 | 75,900.00 |
| 6 | Household furnishings including couches, chairs, tables, linens, dishes, bedroom set, dresser, piano | 10,300.00 | 10,300.00 |
| 7 | TV, computer, printer, phone | 4,000.00 | 4,000.00 |
| 9 | Workout and Recovery Equipment | 1,200.00 | 1,200.00 |
| 11 | Clothing and Shoes | Unknown | Unknown |
| 12 | Necklaces (Based on Replacement Value) | 75,000.00 | 0.00 |
| 17.1 | Cash - Wells Fargo | 8,000.00 | 8,000.00 |
| 17.2 | Robin Hood account | 300,000.00 | 217,596.10 |
| 19 | Big 21 LLC | Unknown | Unknown |
| 19 | SS21 LLC | Unknown | Unknown |
| 22 | Security deposit | 3,481.00 | 3,481.00 |
| | **TOTAL** | 477,881.00 | 320,477.10 |

117.    On December 19, 2023, the Chapter 7 Trustee conducted and concluded the Code § 341 meeting of creditors, which meeting raised a host of questions as to the nature and extent of the wealth owned and generated by Shilo and how much Shilo intentionally omitted from the schedules.

118.    A transcript of the meeting of creditors is attached hereto as Ex. DAR016

**Items not disclosed on schedules.**

119.    The schedules on their face are troubling in many aspects.

120.    Shilo twice failed to itemize and give value to the individual items of personal property.

121.    Shilo has made no attempt to cure these deficiencies since the creditors meeting.

122.    The initial Schedule AB claimed $75,000 of jewelry, and then the amended Schedule AB suddenly disclaimed ownership.

123.    No description of the jewelry was provided in the schedules or to Darjean.

124.     Shilo is known to own and possess skiing or snowboarding equipment and/or gear, which are omitted from Schedule AB.

125.     Shilo is known to own and possess music equipment, which are omitted from Schedule AB.

126.     Shilo twice indicated that the amount of his clothing and shoes is unknown.

127.     As with the other asset categories, Shilo failed to make any kind of categorization or itemization of his clothing and shoes and did not make any attempt to value.

128.     Schedule AB discloses the ownership of a Mercedes GLE AMG 635, but at the meeting of creditors interests in at least two other vehicles were disclosed.  No subsequent amendments to the schedules were made after the meeting of creditors to address these additional vehicles.

129.     Contrary to the schedules, Shilo has admitted acquiring vast amounts of high end and expensive clothing.  For example, on his YouTube Channel posted on May 4, 2023, he states, "Alright we at the Louis (Vuitton) Store I am trying to spend at least $50,00.00 today."

130.     The schedules omit all of the Louis Vuitton wallets, bags, luggage, clothing, or shoes displayed on his Instagram, TikTok, and YouTube accounts.

131.     The schedules fail to mention any other designer brands plastered over his Instagram, TikTok, and YouTube account.

132.     Schedule AB-19 discloses the existence of Shilo in Big 21, LLC and SS21, LLC.

133.     The schedules make no attempt to value the interest of Shilo in these entities or the revenue stream from the entities,

134.     The schedules make no mention of any number of partnerships, deals, and/or contracts with any agents and/or managers including but not limited to SMAC Entertainment, Well

Off Media, Colorado University, Tabetha Plummer, Georgie Moskowitz, Constance Schwartz, and any other company/agent/manager.

135.    At the meeting of creditors, Shilo claimed to possess little to no knowledge of the formation or workings of Big 21, LLC and SS21, LLC except that Shilo is the sole owner of each entity and that the entities are the purported vehicles for contracting the paid promotional appearances and/or Name, Image, and Likeness ("NIL") transactions of Shilo.

136.    Shilo also fails to address in the Schedules the NIL deals, contracts, and/or payments made to him and/or to his companies for any of the obvious paid engagements in which Shilo has appeared in the last several months including but not limited to the following.

   a.    September 28, 2023, Instagram paid partnership with Tint my Ride.

   b.    September 13, 2023, Instagram Paid Partnership with KFC Hot & Spicy Wings.

   c.    August 17, 2023, Instagram Paid Partnership with KFC $20 Fill Up Box.

   d.    August 1, 2023, Instagram and Tiktok Paid Partnership with Metaquest.

   e.    July 3, 2023, Commercial with KFC BBQ Fried Chicken Sandwich.

   f.    June 14, 2023, Instagram Paid Partnership with The Sanders Family and KFC.

   g.    June 13, 2023, Instagram Paid Partnership with The Sanders Family and KFC.

   h.    March 8, 2023, Instagram Paid Partnership with Turbo Tax.

   i.    February 26, 2023, Instagram Paid Partnership with Champs Sports.

   j.    February 12, 2023, Instagram Paid Partnership with Oikos Yogurt.

   k.    January 31, 2023, Oikos Yogurt Superbowl Commercial.

   l.    August 3, 2022, Paid Partnership with Porsche Jackson.

   m.    October 21, 2022, Paid Partnership with Actively Black.

   n.    October 20, 2022, Paid Partnership with Kinly.

   o.    October 11, 2022, Paid Partnership with Instagram Cloud Gaming Chromebook AD.

137.    Shilo doesn't mention any deals, contracts, or payments on behalf of monetization from views, engagement, ads, and paid partnerships from his social media accounts, which include at least the following.

  a.    YouTube Views/Ads/Paid Partnerships.

  b.    Instagram, Threads, Facebook Ads/Paid Partnerships.

  c.    TikTok Views/Ads/Paid Partnerships.

138.    Both times, Shilo marked Schedule AB-26 "none" for copyrights, trademarks, trade secrets, and other intellectual property and Schedule AB-27 "none" for any other general intangible property.

---

Case:23-14859-MER    Doc#:1    Filed:10/23/23    Entered:10/23/23 17:09:32    Page20 of 40

Debtor 1    **Shilo Dion Sanders**    Case number *(if known)* _____

26.  **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
     *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
     ■ No
     ☐ Yes.  Give specific information about them...

27.  **Licenses, franchises, and other general intangibles**
     *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
     ■ No
     ☐ Yes.  Give specific information about them...

---

Case:23-14859-MER    Doc#:20    Filed:12/19/23    Entered:12/19/23 10:20:26    Page4 of 5

Debtor 1    **Shilo Dion Sanders**    Case number *(if known)*  **23-14859**

26.  **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
     *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
     ■ No
     ☐ Yes.  Give specific information about them...

27.  **Licenses, franchises, and other general intangibles**
     *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
     ■ No
     ☐ Yes.  Give specific information about them...

**Money or property owed to you?**                                    Current value of the
                                                                      portion you own?
                                                                      Do not deduct secured
                                                                      claims or exemptions.

---

139.     On the surface, this omission is as glaring as it is preposterous because it is Shilo's very NIL value and/or public value that are the source of the non-stop paid engagements and social media appearances.

140.     The entire underpinning of the NIL concept is the value of the individual athlete, but Shilo chose not only to hide the value of the entire NIL endeavor with the "unknown" listings for the two of the entities that were disclosed (Big 21 LLC and/or SS21 LLC), but Shilo intentionally failed to identify and disclose his individual NIL property interest anywhere in the schedules.

141.     Shilo must have assumed that the trustee and creditors would simply know that the individual NIL interest must exist because of his name alone or perhaps by the flood of social media appearances, but any such assumption does not excuse the failure of Shilo to identify, disclose, and value his most significant and highly valuable asset in the key document of the individual Chapter 7 debtor.

142.     Similarly, Shilo failed to disclose in Schedule G any contracts between himself and the NIL contracting entities, such as Big 21 LLC and/or SS21 LLC.

Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases                        12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
   ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Property* (Official Form 106 A/B).

2. List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone). See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
| --- | --- |
| 2.1  **AT-T Wireless c/o Bankruptcy**<br>**4331 Communications Dr., Fl. 4W**<br>**Dallas, TX 75211** | **Phone Contract** |
| 2.2  **Northcoast Living**<br>**5973 Avenida Encinas, STE 300**<br>**CA 90208** | **Apartment Lease** |

143.     Similarly, Shilo failed to disclose in SOFA 18 any transfers of his individual NIL interest to the entities identified in Schedule AB-19 (Big 21 LLC and/or SS21 LLC) or to any other entity.

| Debtor 1 | **Shilo Dion Sanders** | | Case number (if known) | 23-14859 |

18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?
   Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

   ■ No
   ☐ Yes. Fill in the details.

| Person Who Received Transfer Address | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |

144.     The lack of disclosure of the individual NIL interest of Shilo and the sworn lack of any contacts or transfers between Shilo and Big 21 LLC and/or SS21 LLC provide every indication that Big 21 LLC and/or SS21 LLC, and any other entities through which Shilo receives and/or purports to receive NIL consideration, all are the alter-ego of Shilo and are shams which should be pierced by the Trustee and/or creditors.

145.     At the meeting of creditors, Shilo testified that he essentially lives out of the bank account of Big 21 LLC and/or SS21 LLC for his daily personal and living expenses, including using the Big 21 LLC bank account to pay for this apartment, and that the Big 21 LLC bank account receives football scholarship and/or stipend proceeds from the University of Colorado.

146.     Because Big 21 LLC and/or SS21 LLC, and any other vehicles through which Shilo leverages his NIL property interest, each is the alter ego of Shilo, each is sham entities, and all of the assets and liabilities of each should have been included and fully disclosed in the schedules and SOFA.

147.    Also, On September 30, 2021, Shilo filed an application for the Trademark HEADACHE GANG under his company SS21, LLC.

148.    Shilo omits from the schedules and mention of his Trademark HEADACHE GANG; Serial No. 97053774; which he profits from by selling merchandise on his website.

149.    The schedules also oddly omit any contracts between Shilo and the University of Colorado and/or the NIL entities associated with the University and/or its football team, or relating to any scholarship.

150.    In addition, SOFA-27 (Docket No. 19) lists only two entities in which Shilo has been involved in the last four (4) years, yet testimony at the creditors meeting raised the issue as to whether or not Shilo has owned and/or controlled a number of other entities within the scope of SOFA-27.

**Informal discovery not fulfilled.**

151.    Darjean sought informal discovery prior to filing of this Complaint.

152.    Darjean also attempted to negotiate a Rule 2004 agreed order before the January 29, 2024 discharge complaint deadline to obtain documents from and the testimony of the Debtor, but time was insufficient to complete the agreement, file the agreement, and then obtain the discovery, and then conduct the deposition, before the complaint deadline.

**Shilo buys a house for Deion just after filing for bankruptcy.**

153.    On January 27, 2024, the "Well Off Media" of Deion Sanders on YouTube[4] and several sports news outlets reported that Shilo had participated in the purchase of and had gifted a house in Boulder, Colorado to his father, Deion Sanders.  Ex. DAR017 (CBS news article).

---

[4] Available at: https://www.youtube.com/watch?v=3vZ-F8SmGHg.

154.     The timing and orchestration of the house acquisition by Shilo and conveyance to an insider of Shilo raises a plethora of questions regarding the resources of Shilo used in the acquisition, whether those resources were disclosed in the schedules or at the creditors meeting, and the timing of the deployment of such resources to acquire the property.[5]

## CAUSES OF ACTION

155.     Plaintiff asserts the following claims and causes of action against the Defendant.

156.     Plaintiff incorporates the foregoing paragraphs of this Complaint into each and every Cause of Action below as if fully set forth verbatim therein.

## Count 1 — Objection to discharge, Code § 523(a)(6).

157.     Shilo intended to inflict injury damages upon Darjean by and through the vicious attack by Shilo upon Darjean.

158.     The conduct of Shilo in one or more regards was willful and malicious with respect to the injury and damages caused by Shilo to Darjean.

159.     Furthermore, Shilo sufficiently participated in the Lawsuit such that the FOF and the Judgment should be given preclusive effect in this adversary proceeding, and judgment under Code § 523(a)(6) should be rendered against Shilo and in favor of Darjean as a matter of law.

160.     Accordingly, Darjean requests that the damages that have been awarded to Darjean in the Judgment and sustained by Darjean be determined to be nondischargeable pursuant to Code § 523(a)(6).

161.     In the event that it is determined that the FOF and the Judgment are not to be given preclusive effect, then Darjean would show that Shilo intentionally, knowingly, and/or recklessly

---

[5] Furthermore, the acquisition raises questions as to whether or not a fraudulent conveyance has occurred or whether any interest in the property is recoverable by the Chapter 7 Trustee, and whether the Chapter 7 Trustee should file a notice of lis pendens against the property in question.

physically assaulted and battered Darjean.  The assault and battery by Shilo was sudden, unexpected, unprovoked and without warning. The resulting injuries of Darjean were proximately caused by the assault and battery committed by Shilo.  Further, Shilo intentionally or knowingly threatened Darjean with imminent bodily injury and caused same.

162.    The conduct of Shilo in one or more regards was willful and malicious with respect to the injury and damages caused by Shilo to Darjean.

163.    Accordingly, Darjean requests that the damages sustained by Darjean be determined to be nondischargeable pursuant to Code § 523(a)(6).

**Count 2 — Recovery of attorney's fees and expenses.**

164.    The actions of Shilo necessitated Darjean retaining an attorney, and Darjean has incurred and continues to incur attorney fees and expenses.

165.    Darjean requests that the Court award attorneys' fees and expenses to Darjean to the extent permitted by applicable law.

## CONDITIONS PRECEDENT

166.    All conditions precedent to Darjean's claims for relief have been performed or have occurred.

## CONCLUSION AND PRAYER

WHEREFORE, John Darjean, Plaintiff, respectfully requests that Shilo Dion Sanders, Defendant, be cited to appear and answer, and Plaintiff request upon final adjudication by the Court that the Court enter judgment in favor of Darjean and order, adjudge, and decree that:

(1)    that the Judgement in favor of Darjean and the injury and damages suffered by Darjean at the hand of Shilo Dion Sanders be excepted from the discharge of Shilo Dion Sanders pursuant to Code § 523(a)(6) as set forth above.

Plaintiff respectfully requests that the Court award to Plaintiff attorneys' fees and expenses to the extent permitted by applicable law and grant to Plaintiff such other and further relief to which Plaintiff is entitled otherwise at law or in equity.

*{remainder of page intentionally blank}*

Dated:  January 29, 2024          Respectfully submitted:

MATHIAS RAPHAEL PLLC

By: */s/ Ori Raphael*         
    Ori Raphael  (Tx Bar No. 24088273)
    Mathias Raphael PLLC
    13101 Preston Road, Suite 501
    Dallas, TX 75240
    214-739-0100
    ori@mr.law

*- and -*

SWEETBAUM MILLER, PC

By: */s/ Andrew Miller*       
    Alan D. Sweetbaum (#13491)
    Andrew Miller (#44219)
    1200 17th Street, Suite 1250
    Denver, CO 80202
    Telephone: (303) 296-3377
    asweetbaum@sweetbaumlaw.com
    amiller@sweetbaumlaw.com

*- and -*

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
By:   */s/ Jeff Carruth*\*              
    JEFF CARRUTH (Tx Bar No. 24001846)
    2608 Hibernia, Suite 105
    Dallas, TX 75204-2514
    Telephone: (713) 341-1158
    Fax: (713) 961-5341
    E-mail:  jcarruth@wkpz.com

**ATTORNEYS FOR JOHN DARJEAN**

*\* Signature by permission by /s/ Andrew Miller*