**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | Case No. 23-14859 MER |
| Shilo Dion Sanders, | Chapter 7 |
| Debtor. | |
| John Darjean, | Adversary Pr. No. 24-1022 MER |
| Plaintiff, | |
| v. | |
| Shilo Dion Sanders, | |
| Defendant. | |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO INTERVENE**

THIS MATTER comes before the Court on the Motion to Intervene for the Limited Purpose Of Seeking Redacted Judicial Records And Objecting, Prospectively, to Any Proposed Closure of the Trial Herein ("**Motion to Intervene**") filed by Gannett Satellite Information Network, LLC d/b/a USA Today ("**USA Today**"), the responses filed by Plaintiff John Darjean ("**Darjean**") and Debtor/Defendant Shilo Dion Sanders ("**Sanders**"), and USA Today's reply.[1]

**BACKGROUND**

This case is a continuation of a long-standing dispute between Sanders and Darjean.  In 2016, Darjean sued Sanders in Texas state court (the "**State Court**").  The lawsuit concerned an altercation that occurred in 2015 at a private school where Darjean was employed, and Sanders was a student.  Sanders was fifteen years old at the time and still a minor.  During the Texas proceeding, Sanders filed a motion for a protective order because Darjean was allegedly seeking discovery of various records that were confidential under state law and/or impacted his privacy rights as a minor.[2]  The State Court entered a blanket protective order dated April 16, 2018 (the "**2018 Protective Order**") that limited the parties' use of any information or documents

---

[1] ECF Nos. 136, 141, 143, 145.

[2] ECF No. 50, Ex. D (citing TEX. FAM. CODE §§ 58.005, 58.008, 58.106).

produced during the case, "including but not limited to medical practitioners or facilities, the Dallas County Sheriff's Department, Dallas Police Department, Letot Center, Child Protective Services, Sachse High School and Trinity Christian School."[3]  The State Court held a trial in 2022 (which Sanders did not attend) and entered an order and judgment in favor of Darjean in the amount of $11,890,937.  Sanders filed for bankruptcy in 2023, shortly after Darjean initiated collection efforts.

Darjean then initiated this adversary proceeding against Sanders, alleging the State Court's judgment is nondischargeable under 11 U.S.C. § 523(a)(6).[4]  Early in this case, Sanders filed a motion alleging that Darjean was violating the 2018 Protective Order and seeking entry of a similar protective order.[5]  Darjean disputed those allegations, and this Court ordered the parties to litigate the scope of the 2018 Protective Order in the State Court.  Meanwhile, this Court also ordered any pleadings discussing or attaching materials protected by the 2018 Protective Order be filed under seal.  The parties then returned to Texas to determine the continuing validity of the 2018 Protective Order.  On May 15, 2024, the State Court issued an order clarifying that the 2018 Protective Order remained in effect, but permitting the parties to use protected materials in Sanders' bankruptcy case and related adversary proceedings.[6]  The State Court also granted Sanders' request to seal certain pleadings that had been filed in the Texas case, concluding that "there is a specific, serious and substantial interest involved in this case- *i.e.*, Shilo Sanders' privacy interest relating to conduct and circumstances that took place while he was a minor."[7]

Trial on Dajean's dischargeability complaint is currently scheduled for August 31-September 4, 2026.  This Court, in an earlier ruling on Darjean's summary judgment motion, has already determined that the State Court's order and judgment have collateral estoppel effect on the issues of causation and damages but not on the issues of willful act, malicious injury, or self-defense.[8]  Thus, trial will be limited to those specific issues.

---

[3] ECF No. 22, Sander's Motion for Protective Order, Ex. 1, ¶ 1.

[4] All references to "section" or "§" shall refer to Title 11, United States Code, unless expressly stated otherwise.

[5] ECF No. 22.

[6] ECF No. 40, Ex. A ("[T]he Court hereby orders that: (a) its Protective Order dated April 16, 2018, remains in effect, except the parties are expressly allowed to retain documents and information covered by the Protective Order for use solely in connection with the following bankruptcy case: *In re Shilo Dion Sanders,* Case No. 23-14859; and associated Adversary Proceeding Nos. 24-01022 and 24-01023[.]").  Separately, this Court also granted a motion by Sanders in his main bankruptcy case for entry of a protective order.  That order was primarily aimed at litigation between Sanders and the Chapter 7 Trustee but, by its terms, also applies to this adversary proceeding.  *See* ECF No. 84.

[7] ECF No. 54.  The State Court determined this privacy interest outweighed the presumption of openness for judicial records.

[8] ECF No. 67.

2

As part of pretrial preparations, the Court was advised that Dajean intended to use material protected by Texas juvenile privacy laws and the 2018 Protective Order.  In light of the very limited issues to be tried in the dischargeability action, the Court set a deadline for filing motions in limine to evaluate which aspects of the protected information were germane to those issues.  Sanders filed six such motions, to which Darjean objected, all under seal.[9]  The Court set an *in camera* oral argument on the motions in limine, with attendance limited to parties and their attorneys.  This allowed the Court and the parties to openly discuss protected documents without public disclosure.  The Court issued a Minute Order granting some of Sanders' motions in limine and denying others.[10]

In the Motion to Intervene, USA Today asks the Court to unseal or provide redacted copies of the motions in limine and responses as well as the transcript from the oral argument.  USA Today also objects, prospectively, to any closure of the upcoming trial.  Sanders objects to some of the relief sought in USA Today's Motion.

## ANALYSIS

**A.      Intervention**

USA Today's ability to intervene is controlled by Fed. R. Civ. P. 24(b), made applicable to this proceeding by Fed. R. Bankr. P. 7024.[11]  In relevant part, Rule 24(b)(1) gives a court discretion to permit anyone to intervene who files a timely motion, and who "has a claim or defense that shares with the main action a common question of law or fact."[12]  In making the determination, a court should consider whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights."[13]  Courts generally take a flexible approach to Rule 24(b)'s "common question of law or fact" requirement when dealing with requests by the press to gain access to judicial records or documents subject to protective orders or orders to seal.[14]  "When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits."[15]  Because, in such situations, the intervenor is not seeking to become a party to the litigation but seeks to intervene only for the purpose of modifying a protective order

---

[9] ECF Nos. 119-128.

[10] ECF No. 134.

[11] *Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 204 (D. Colo. 2002) ("Permissive intervention under Fed. R. Civ. P. 24(b) is the appropriate procedural device for third parties to challenge a protective or confidentiality order.").

[12] Fed. R. Civ. P. 24(b)(1)(B).

[13] Fed. R. Civ. P. 24(b)(3).

[14] *Id.* (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990)).

[15] *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990).

"there is no reason to require such a strong nexus of fact or law."[16] Indeed, "[e]very court of appeals to have considered the matter has come to the conclusion that Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders."[17] Under this flexible standard, the Court concludes USA Today has sufficiently shown a common question of law or fact with the underlying action.

In addition to meeting the procedural requirements of Rule 24, an intervenor must establish standing to intervene. In bankruptcy cases, courts have held that the press has standing to intervene to challenge protective orders or orders sealing records to obtain access to protected information. This determination typically rests on a finding that the order at issue impedes the intervenor's access to information and that a decision to unseal would remedy the injury.

In this case, USA Today does not identify a specific injury but asserts that it should be granted access to the sealed motions in limine pleadings and the sealed transcript of the oral argument. It asks the Court to provide at least redacted versions of those pleadings and the transcript. This is sufficient to establish standing. Accordingly, the Court will allow USA Today to intervene for the limited purpose identified in the Motion to Intervene.

**B.     Access to Judicial Records Discussed as Part of a Motion in Limine Hearing**

It is well established that the public has a general right of access to judicial records.[18] This right extends to bankruptcy proceedings.[19] However, this right is not absolute.[20] Initially, the public's right of access to litigation-related materials depends, in part, on the stage of litigation. In the discovery context, there is no presumption of public access to unfiled discovery.[21] As one court put it, "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record."[22] In the discovery phase, courts have discretion to enter protective orders limiting the use or disclosure of discovery materials upon showing of good cause.[23] Things change, however, at the

---

[16] *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 473–74 (9th Cir. 1992).

[17] *Young*, 2018 WL 1588026, at *5 (citing *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000)).

[18] *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir.2007)).

[19] *In re Genesis Global Holdco, LLC*, 652 B.R. 618, 630 (Bankr. S.D.N.Y. 2023).

[20] *Id.*

[21] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33-34 (1984).

[22] *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002).

[23] Fed. R. Civ. P. 26(c)(1), made applicable by Fed. R. Bankr. P. 7026.

adjudication stage.[24]  "The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record."[25]  Unlike discovery material, "[t]he public has a strong interest in obtaining the information contained in the court record."  In other words, once a litigant files a document with the court and it becomes part of the judicial record, different rules and presumptions apply. [26]

There is a danger, however, to unfettered access.  In a case with a different set of facts and issues, the Second Circuit Court of Appeals noted some of the dangers:

> While the law governing public access to these materials is largely settled, we have not yet adequately addressed the potential harms that often accompany such access. These harms are apparent. Over forty years ago, the Supreme Court observed that, without vigilance, courts' files might "become a vehicle for improper purposes." Our legal process is already susceptible to abuse. Unscrupulous litigants can weaponize the discovery process to humiliate and embarrass their adversaries. Shielded by the "litigation privilege," bad actors can defame opponents in court pleadings or depositions without fear of lawsuit and liability. Unfortunately, the presumption of public access to court documents has the potential to exacerbate these harms to privacy and reputation by ensuring that damaging material irrevocably enters the public record.[27]

The Court is **NOT** suggesting that any party seeks to use the protected information for nefarious purposes in this case. Rather, the last sentence of the quote highlights the need for guideposts to ensure the adjudication of the issues at trial without exacerbating potential harm to privacy and reputation. The presumption in favor of access to judicial records may be overcome where "countervailing interests heavily outweigh the public interests in access." A trial court "in its discretion, may seal documents if the public's right of access is outweighed by competing interests." This is where motions in limine play an important role in the trial process. A motion in limine is "a procedural mechanism to limit in advance testimony or evidence in a particular area." A party files a motion in limine to exclude anticipated prejudicial evidence before it is introduced at trial. A court has the power to grant such motions pursuant to its "inherent authority to manage the course of trials," even though such rulings are not explicitly authorized by the Federal Rules of Evidence. Regardless of a court's initial decision on a motion in limine, it may revisit the issue at trial.

At this point, it is important to outline again the issues to be determined at the upcoming trial in this case.  Darjean seeks a determination that his claim in Sanders'

---

[24] *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (2016) (citing *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

[25] *Id*.

[26] *Leucadia, Inc. v. Applied Extrusion Technologies, Inc*., 998 F.2d 157, 161-62 (3d Cir. 1993).

[27] *Brown v. Maxwell,* 929 F.3d 47, 47 (3d Cir. 2019) (internal citations and footnote omitted).

bankruptcy case is nondischargeable pursuant to § 523(a)(6).  The required elements of a § 523(a)(6) claim are: "(1) an intentional action by the defendant; (2) done with the intent to harm; (3) which causes damage (economic or physical) to the plaintiff; and (4) the injury is the proximate result of the action by the defendant."[28]

The first element refers to proof of a willful act.  Willfulness "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[29]  The debtor must "intend 'the consequences of an act,' not simply 'the act itself.'"[30]  Courts have recognized two ways of establishing willful conduct.  The debtor must either "desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it."[31]  The latter "substantial certainty" test is not an objective test.[32]  Rather, willfulness under both standards is a wholly subjective test dependent on the state of mind of the debtor.[33]

The second element requires proof of a malicious injury, which is distinct from willfulness.  Malicious injury requires evidence of the debtor's motives.  To be malicious, the debtor must have "acted with a culpable state of mind vis-à-vis the actual injury caused to the creditor."[34]  The debtor's action must be "wrongful and without just cause or excuse."[35]  An act may be malicious if taken "in conscious disregard of one's duties and without just cause or excuse, even in the absence of personal hatred, spite or ill-will."[36]  "[A]ll the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind.[37]  For example, "an act taken with intent to harm an individual who is also a

---

[28] *Trans-West, Inc. v. Mullins (In re Mullins)*, 2021 WL 2679137, at *6 (10th Cir. BAP June 30, 2021) (citing *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 790 (Bankr. D. Colo. 2002)).  As noted in the Order Granting in Part and Denying in Part Motion for Summary Judgment (ECF No. 67) the third and fourth elements were established in the State Court trial.

[29] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[30] *Id.* at 61-62.

[31] *In re Moore,* 357 F.3d at 1129 (internal quotation omitted).

[32] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 913 (10th Cir. BAP 2020); *Via Christi Reg. Med. Center v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. Sept. 8, 2000).

[33] *In re Smith*, 618 B.R. at 913.

[34] *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 2022 WL 2679049, at * (10th Cir. July 12, 2022) (citing *In re Smith*, 618 B.R. at 919).

[35] *In re Smith*, 618 B.R. at 919.

[36] *Id*.

[37] *Id.* at 919 (citing *Dorr, Bentley & Pecha v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir. 1993)).

creditor is not 'malicious' if the debtor used reasonable force acting in self-defense."[38]

In this case, USA Today is seeking access to judicial records–namely Sanders' motions in limine and related responses.  This Court must consider whether any countervailing interests overcome USA Today's right to access.  The motions in limine, in part, seek to preclude from evidence, certain records created when Sanders was a minor by the Dallas Police Department, the Letot Juvenile Detention Facility, Texas Child Protective Services and his high school (collectively the "**Juvenile Records**"). Neither Sanders' motions in limine nor the responses thereto attach copies of the Juvenile Records, but the pleadings discuss their contents.

There is no question that when Sanders asked the State Court for a protective order in 2018, he cited his privacy interests as a minor and the protections afforded to juvenile records under Texas law.[39]  When it entered the 2018 Protective Order, the State Court recognized these interests by issuing a blanket protective order covering all discovery materials, including records held by "medical practitioners or facilities, the Dallas County Sheriff's Department, Dallas Police Department, Letot Center, Child Protective Services, Sachse High School and Trinity Christian School."  The State Court has since clarified that the 2018 Protective Order remains in place and continues to protect such records.  While the existence of the 2018 Protective Order is important, the Tenth Circuit has made clear that "the parties cannot overcome the presumption against sealing judicial records simply by pointing out that the records are subject to a protective order."[40]  Here, the State court took the extra step of also sealing judicial records in the Texas case based on Sanders' "privacy interest relating to conduct and circumstances that took place while he was a minor."[41]

This Court agrees with the State Court's determination that Sanders has a substantial privacy interest in protecting his Juvenile Records from disclosure.  Although this Court has limited expertise in Texas state law governing juveniles, several statutes appear to protect the confidentiality of various types of juvenile records.[42]  This comports with the notion that the law treats juveniles differently and protects their privacy in various ways.[43]  Policies of non-disclosure developed out of beliefs that it was important to protect individuals from ridicule for youthful indiscretions and to promote

---

[38] *Id.* at 919-20.

[39] ECF No. 50, Ex. D.

[40] *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011).

[41] ECF No. 54.

[42] See Tex Family Code §§ 58.005, 58.0051, 58.106, 261.201.

[43] *See, e.g., Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1375-76 (8th Cir. 1990) (discussing various ways courts and legislatures protect juvenile privacy); *Aranda v. Cty. of Los Angeles*, 2019 WL 11838767, at *3-4 (C.D. Calif. Dec. 6, 2019) (discussing protection of minor's medical, education and juvenile court records); *Doe v. Plymouth-Canton Community Schools*, 2021 WL 5544848, at * (E.D. Mich. Jan. 12, 2021) (limiting access to minor's medical and educational records).

the central goal of juvenile legislation—rehabilitation.[44]  Although Sanders is no longer a juvenile in need of rehabilitation, he retains an interest in keeping private his prior interactions with the Texas juvenile system.  In circumstances such as this, this Court believes that the public's right of access is outweighed by competing juvenile privacy interests.[45]  These interests trump the public's right to access, especially given that the Court has already excluded many of the Juvenile Records as irrelevant and may ultimately exclude others.  In other words, many of the Juvenile Records are unlikely to be used in the most important step of the adjudicative process—the trial.

The Court recognizes that any order limiting public access to judicial records must be narrowly tailored to serve the interest identified.[46]  There are substantial portions of the motions in limine and responses that do not concern Sanders' Juvenile Records and/or which discuss them generally.  These portions can be disclosed without impacting Sanders' privacy interests.  As such, the Court will docket redacted versions of the motions in limine and related responses.

### C.      Sealing of Transcript/Hearing

USA Today also asks for a copy of the transcript from the July 14 oral arguments on the motions in limine.  Limiting access to court proceedings or transcripts from court proceedings is similar to the analysis for limiting access to court records.  There are both common-law and First Amendment rights of public access to court proceedings.[47]  These rights create a presumption that court proceedings will be open.[48]  To close a

---

[44] *World Pub. Co. v. White*, 32 P.3d 835, 846 (Okla. 2001) (citing E. Bazelon, "*Public Access to Juvenile & Family Court: Should the Courtroom Doors be Open or Closed?*", 18 Yale L. & Pol'y Rev. 155 (1999); K. Nelson, "*The Release of Juvenile Records under Wisconsin's Juvenile Justice Code: A New System of False Promises,*" 81 Marq. L.Rev. 1101 (1998)).

[45] *See Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011) ([T]his Court, "in its discretion, may seal documents if the public's right of access is outweighed by competing interests.").  The Court acknowledges that 11 U.S.C. § 107 addresses the sealing of judicial records in bankruptcy cases.  That section states that "[e]xcept as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."  11 U.S.C. § 107(a).  Subsection 107(b) allows a bankruptcy court seal or otherwise protect judicial records from public access if those records contain either (1) "trade secret or confidential research, development, or commercial information"; or (2) "scandalous or defamatory matter."  *Id*. § 107(b).  Juvenile records are not listed in § 107(b) as protectable records.  This is not surprising given that bankruptcy cases almost never directly involve juveniles or any type of juvenile records.  At most, § 107(b) incorporates § 112, which requires the names of minors to be redacted from bankruptcy court pleadings.  Despite the lack of explicit mention in § 107(b), this Court believes that, in this rare set of circumstances, it retains the discretion to seal documents if the public's right of access is outweighed by competing juvenile privacy interests.

[46] *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019).

[47] *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) ("A presumption of openness inheres in civil trials as in criminal trials."); *Thomas v. Colorado*, No. 112CV03078REBCBS, 2015 WL 6172185, at *1 (D. Colo. Oct. 21, 2015).

[48] *Publicker*, 733 F.2d at 1070; *Mike v Dymon, Inc.*, 1997 WL 38111, at *1 (D. Kan. Jan. 23, 1997).

proceeding or transcript, a court must articulate the countervailing interest it seeks to protect, and the record should demonstrate an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.[49]  Even if an overriding interest is found to overcome the presumption of openness, the closed hearing still has to be "narrowly tailored to serve that interest."[50]

As discussed above, trial in this matter is limited to certain narrow issues.  In this case, the Court set oral arguments on the motions in limine to determine whether certain categories of documents to be offered by Darjean were sufficiently relevant and limited to those issues.  Some of the documents Sanders' motions sought to preclude are the Juvenile Records.  As discussed above, the Court finds that Sanders has a legitimate privacy interest in keeping these records private.  To discuss the relevance and continued confidentiality of those records without disclosing them to the public, attendance at the hearing needed to be limited.  To hold otherwise would defeat the purpose of the hearing.[51]  Nevertheless, to narrowly tailor the sealing of court proceedings on the motions in limine, the Court will docket a redacted version of the July 14 transcript.  This transcript will redact references to protected Juvenile Records that will not be relevant to issues at the upcoming trial.

### D.    Upcoming Trial

Finally, USA Today requests that the Court not limit public access to the upcoming trial absent the requisite findings that closure is necessary.  The Court has no intention of preventing public access to the trial.  Darjean may offer Juvenile Records as exhibits, and/or witnesses may discuss Juvenile Records.  Assuming that evidence or testimony is deemed relevant, the Court will determine on an *ad hoc* basis whether preventing public access to those records is necessary.  The offered exhibits will not be part of the public record unless and until the Court admits such exhibit.  However, the Court notes that, to the extent any Juvenile Records are necessary to determine the parties' substantive legal rights at trial, there is an even stronger presumption of public access.[52]  Sanders' interests in privacy of his Juvenile Records may well give way to the interests in public access if those records are relevant and necessary to determining the § 523(a)(6) claim.

---

[49] *Publicker*, 733 F.2d at 1071; *In re Catholic Diocese of Wilmington, Inc*., 2012 WL 2359880, at *2 (Bankr. D. Del. June 20, 2012).

[50] *Publicker*, 733 F.2d at 1073.

[51] *Publicker*, 733 F.2d at 1072 ("[W]e believe the district court acted properly in excluding the public from that part of the hearing that concerned the question of whether certain 'sensitive' information should be kept confidential by a court order."); *In re Catholic Diocese of Wilmington, Inc*., 2012 WL 2359880, at *2 ("It would make a mockery of the judicial process and the rights of [litigants] to have a public hearing on whether information should be made public.").

[52] *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) ("Where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches.").

The Court intends to hold a pre-trial conference on Friday, August 14, 2026, at 1:00 p.m.  Attendance at that conference is not limited.  However, the Court anticipates a discussion of the parties' designations of deposition testimony to be offered at trial and whether any of that testimony should be excluded under the Rules of Evidence.  Some of that discussion could entail Sanders protected Juvenile records.  For the reasons discussed above, the Court reserves the right to exclude the public from portions of the conference that are determining the admissibility and continued confidentiality of those records.  As is being done with the transcript of the hearing on the Motions in Limine, the Court will docket a redacted transcript of any part of the pretrial conference held in camera.

## CONCLUSION

For the reasons stated above, the Court hereby ORDERS that USA Today's Motion to Intervene is GRANTED IN PART and DENIED IN PART as follows:

1. USA Today is allowed to intervene for the limited purpose described in the Motion to Intervene;

2. USA Today's request for release of redacted versions of the motions in limine and related pleadings is GRANTED;

3. USA Today's request for release of redacted versions of the July 14 transcript is GRANTED.

4. USA Today's objection to any closure of the trial is SUSTAINED, with the Court retaining the right to make *ad hoc* decisions regarding the sealing of any evidence of Sanders juvenile records.

Dated: August 12, 2026.                    BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court